RATTAN SPECIALTIES OF PUERTO RICO, INC., Plaintiff

v.

TOBY'S INTERIORS, INC., Defendant

# Civil No. 766-1967

# Municipal Court of the Virgin Islands

### Div. of St. Croix

### Christiansted Jurisdiction

# October 23, 1968

BAILEY & WOOD, ESQS., St. Thomas, Virgin Islands, *for plaintiff*

JOHN D. MARSH, ESQ., Christiansted, St. Croix, Virgin Islands, *for defendant*

JOSEPH, *Judge*

## MEMORANDUM OPINION

Plaintiff and Cross-defendant, Rattan Specialties of Puerto Rico, Inc., hereinafter referred to as plaintiff, is a manufacturer of rattan furniture in Puerto Rico. Defendant and Cross-plaintiff, Toby's Interiors, Inc., hereinafter referred to as defendant, is a Virgin Islands corporation engaged in the interior decorating and retail furniture business in St. Croix. The principals of the two business firms are, respectively, Rene Lopez-Duprey, president of Rattan Specialties, Inc., and Wayne A. Schoyer, president of Toby's Interiors, Inc., both of whom appeared as witnesses on behalf of their companies. Mr. Schoyer is also known as, and referred to throughout the testimony as Toby Schoyer.

In 1958, when Mr. Schoyer was employed by Rasmussen Associates, Inc., that firm entered into an agreement with plaintiff whereby it was agreed that it would be the exclusive representative for plaintiff for the island of St. Croix. This agreement is evidenced by, and its terms set forth in, a series of three letters which have been placed in evidence herein, without objection, as plaintiff's exhibit number 1. They consist of a letter of October 15, 1958, from plaintiff to Mr. J. Rasmussen, a reply dated October 18, 1958, from Mr. Rasmussen of Rasmussen Associates, Inc., and plaintiff's response of October 28, 1958. These letters confirm an agreement which had been made orally at an earlier meeting between Mr. Rasmussen, Mr. Duprey and Mr. Brewerton, plaintiff's sales manager, and further define certain of its terms. Apparently plaintiff and Rasmussen Associates, Inc., operated under the terms of this agreement until June or July, 1964, at which time Mr. Schoyer, Mr. Duprey and Mr. Norman Smith formed a business enterprise which was later incorporated as Toby's Interiors, Inc., in which the gentlemen named held the capital stock. At the time of the formation of this enterprise it was agreed between plaintiff and the incorporators that the exclusive representation then held by Rasmussen Associates, Inc., would be given to the new corporation, defendant, under the same terms and conditions as had previously existed with Rasmussen Associates, Inc.

The facts as above stated are not disputed by the parties hereto, or either of them. At this point, however, plaintiff's witness, Mr. Duprey, testified at the trial that there was one exception made in the adoption of the Rasmussen agreement and that was that the agreement could be terminated at any time either party thought it should be. Mr. Duprey, in giving his deposition prior to trial, stated, however, that the agreement was "that we would continue to function in exactly the same way as we had functioned

before with Rasmussen Associates", and Mr. Schoyer has testified that there was no agreement or discussion concerning a variation in the Rasmussen agreement insofar as its termination was concerned or otherwise. As Mr. Schoyer pointed out, Mr. Duprey was his "partner" and "why should he agree to terminate the contract to buy his furniture?". The court accordingly finds that there was no variation of the Rasmussen agreement when it was adopted by the parties hereto, and that the provisions with respect to termination are set forth in paragraph numbered 1 of Mr. Rasmussen's letter of October 18, 1958, to plaintiff, as follows:

". . . the agreement . . . will be subject to discontinuance only by mutual conference, and, say 90 days notice from either side."

This point is material, as will subsequently appear.

The agreement between the parties, made as noted above, is not disputed. On all sales made directly by defendant it would receive as a commission the difference between the wholesale price and the retail price. It was contemplated that this would be at the usual retail price of fifty percent more than the wholesale price, but it was recognized that in some "extreme cases" (see plaintiff's letter of October 28, 1958, to Rasmussen Associates, plaintiff's Exhibit 1) discounts would be given the purchaser for volume sales which would reduce the retail price and lessen the defendant's commission accordingly. Each such case was to be reported to the dealer. The same commission was to be paid when sales were made by plaintiff in its San Juan showrooms for shipment to St. Croix. When sales were made by plaintiff to hotels on St. Croix a ten percent commission was to be paid to defendant (see deposition of Rene Lopez-Duprey, pages 4 and 5, admitted in evidence as plaintiff's exhibit 5). A further provision was made, the precise terms of which are disputed by the parties, concerning sales made through decorators outside of St. Croix. The court finds

as a matter of fact that defendant's version of this part of the agreement is the correct one, as evidenced by the Rasmussen letter of October 18, 1958 (plaintiff's exhibit 1), which states at the top of page two:

"4. It is also agreed that as exceptions to point (3) should be cases where you have orders on hand through your present connections, and where an Interior Decorator with whom you have dealt before on St. Croix business places further orders. However, should new decorators establish themselves over here (or architects) and should place orders for shipments to St. Croix, then we feel we should be protected."

Operating under the terms of this agreement the parties have conducted an active business relationship which has, in fact, continued to the date of the trial. In 1966 Mr. Schoyer purchased Mr. Duprey's stock in defendant corporation and an element of disagreement arose between the parties. In 1965 plaintiff made a sale of furniture in the amount of $5,550 to the St. Croix by the Sea Hotel. The hotel was engaged in building a large addition and in this connection employed Mr. and Mrs. William Sigal as architect and decorator, respectively. Mr. Schoyer approached Mr. St. Claire Childs, Mr. Sigal's associate, concerning the purchase of furniture for the new addition. Thereafter he flew to San Juan in Mr. Child's private plane with him, Mr. and Mrs. Eric Lawaetz, owners of the hotel, and Mr. Bredemeier where, with Mr. and Mrs. Sigal, they visited plaintiff's showrooms to inspect its furniture and to meet Mr. Duprey. Although Mrs. Sigal may have been in plaintiff's showrooms previously, Mr. Duprey had no knowledge of meeting her before this time and neither she nor her husband had dealt with his firm on prior occasions. From this meeting and subsequent negotiations it developed that Mr. Sigal designed some items of furniture which were manufactured and sold by plaintiff to St. Croix by the Sea and total sales amounting to $5,550 and at a

later date $5,560 were made. In April, 1965, and again in December of that year defendant wrote plaintiff claiming a commission on the sale to the St. Croix by the Sea Hotel. Plaintiff has justified its refusal to pay defendant for this sale upon the contention that inasmuch as Mrs. Sigal is a San Juan decorator no commission is due. This is contrary to the agreement of the parties. Mrs. Sigal was not a "decorator . . . with whom [plaintiff had] dealt before on St. Croix business."

On May 1, 1967, plaintiff wrote defendant (plaintiff's exhibit 9) calling attention to the fact that defendant's account with plaintiff had an outstanding balance of $12,700.03 and setting forth a plan for payment. Defendant replied by letter dated May 29, 1967 (plaintiff's exhibit 5), stating, among other things, that plaintiff owed it commissions for sales of furniture to St. Croix by the Sea, Estate Carlton, Old Quarter Hotel, Pelican Cove and possibly others and asking that the amount of these commissions be determined and the amount deducted from defendant's indebtedness to plaintiff. Defendant also asked that its accountant be permitted to examine plaintiff's sales invoices to determine the amount of the commissions due it and also to see if there were any additional sales on which defendant was due a commission. These requests were apparently ignored. After some additional correspondence and conferences plaintiff wrote defendant on August 2, 1967, stating:

"Again, I must warn you that unless we receive payment in full by Friday, August 11, I shall proceed to sue you in payment of amount owed us. Also, our commercial relationship will be ended as of that date."

Relying on this letter as notice of termination of the exclusive representation agreement, plaintiff has refused to pay defendant commissions due under the agreement other than on orders from defendant since that date.

On September 25, 1967, plaintiff filed herein its complaint in an action of debt for $8,851.79. At the same time an affidavit for attachment was filed wherein it was sworn that defendant was indebted to plaintiff in the sum of $8,851.79 over and above all legal setoffs and counterclaims. An attachment filed the same day was subsequently issued and served upon defendant. Defendant was forced to borrow $9,000 to stay the effects of the attachment. Thereafter it filed an undertaking, depositing the sum of $8,851.79 with the court as security, and on November 13, 1967, it filed a motion to dissolve the attachment and an answer and counterclaim. In the motion to dissolve defendant alleged that the attachment was issued upon a false and fraudulent affidavit in that the affiant stated that defendant was indebted to plaintiff in the sum of $8,851.79 over and above all legal setoffs and counterclaims, whereas plaintiff knew that at the time of the issuance of the writ defendant had a good and valid legal setoff and counterclaim for commissions earned by defendant. Defendant moved for the dissolution of the attachment, the release of the bond and for damages sustained by reason of the improper issuance of the writ. By way of answer defendant admitted an indebtedness to plaintiff in the amount of $6,472, alleged that the debt was being reduced in accordance with an agreement between the parties, that demand had been made by plaintiff but that defendant had refused to pay the same until and unless it received an accounting of commissions due defendant by plaintiff. The counterclaim set forth defendant's claim against plaintiff for commissions due for sales made to St. Croix by the Sea Hotel, the Old Quarter Hotel and to the owners of the Carlton Hotel and possibly others, alleged a breach of the contract to pay such commissions and to account to defendant therefor, prayed for an accounting of moneys due defendant and that the sums found to be due be set off against plaintiff's

claim if less than that amount, or if more, that plaintiff have judgment for the excess. Defendant also prayed for costs, including reasonable attorney's fees.

Interrogatories propounded by defendant resulted in the production of a list of persons and corporations to which sales were made by plaintiff directly for delivery in St. Croix since January 1, 1965, showing the invoice numbers, the amounts of the sales and the amounts of commissions paid defendant and the dates of payment.

The motion to dissolve the attachment came on for hearing on March 7, 1968, at which time defendant's counsel informed the court that the money claimed by plaintiff to be due and owing by defendant had been fully paid. Counsel for plaintiff asked for the opportunity of verifying this fact with his client, and it was agreed, with the approval of the court, that upon such verification and the filing of a stipulation signed by counsel for the parties the attachment would be released, reserving for the trial of the case the question of the alleged wrongful attachment. Through no fault of defendant the stipulation had not been presented to the court and the attachment had not been released when the case came to trial on May 17, 1968.

The court finds as a matter of fact that there were very substantial sums of money due by plaintiff to defendant at the time suit was filed herein and the attachment issued, and that plaintiff knew of defendant's claims in this regard. It is, accordingly, the conclusion of the court that the affidavit was falsely made and the attachment was wrongful. Furthermore, the court is of the opinion that plaintiff's efforts to terminate the exclusive contract by its letter of August 2, 1967, were unsuccessful. The agreement provided for "mutual conference", which, whatever may be its meaning, certainly did not contemplate a unilateral threat to cancel the agreement unless a debt was paid.

Defendant does not dispute the fact, and its records show, that on August 28, 1967, after receiving credits for the commissions due on the Neal and Koether sales, it owed plaintiff $8,851.79. This amount was gradually reduced so that on March 6, 1968, it was fully paid. See defendant's exhibit E. The court finds the following amounts to be due defendant by plaintiff as commissions earned pursuant to the agreement of the parties; taking the various transactions in the order in which they appeared in the answers to the interrogatories and in the examination of the witnesses:

1. Howard Spiller. Plaintiff has testified that the amount of the sale was $998.10 and defendant, relying on the fifty percent mark-up formula, claims that he should have received $332.70 rather than $246.70 which it was paid, making a difference of $86 due. The purchase order and invoice filed by plaintiff as part of its exhibit 13 show that the amount of the rattan furniture sold was $1063 and that ten percent of that amount was given the purchaser as a discount. The wholesale value was $710, leaving a difference of $246.70 between the price actually received and the wholesale price. The deduction of the discount of $106.30 from defendant's commission of $353 does not appear to be in conformity with the agreement of the parties since the matter is not shown to have been reported to defendant, nor, in the light of other sales listed below, is it an "extreme case". Accordingly, on the basis of plaintiff's records, $106.30 is due defendant.

2. William Alexander. The amount of the sale was $974. Applying the formula $324.67 is due defendant.

3. Clement Cintron. The amount of the sale was $521 less a five percent discount of $26.05. Thus $173.64 is due defendant.

4. Hugh Bennett. The amount of the sale was $1610 and a ten percent discount was given. $536.67 is due defendant.

5. Robert Study. Retail price $1108.48 and a ten percent discount was given. The commission to defendant is $369.49.

6. St. Croix by the Sea Hotel. Ten percent of the amount of the sale or the sum of $555 is due defendant.

7. Rasmussen Associates. No commission is claimed by defendant.

8. The Buccaneer Hotel. Ten percent of the amount of the sale or the sum of $84 is recognized by plaintiff to be due defendant.

9. Hotel Royal Dane, Inc. Plaintiff contends that there is no commission due defendant as the order was made by a decorator. Here again there is no contention that the decorator was one with whom plaintiff had previously dealt on St. Croix business. The ten percent commission amounts to $64.55.

10. Bill Boydston. This was a sale made to an individual, Mr. George Dyer, on an order placed by Mr. Boydston, a decorator from San Juan. As above, there is no claim of earlier dealings with Mr. Boydston and applying the 50 percent formula to the sale of $613.60, $204.53 is due defendant.

11. The Beach Hotel of St. Croix. Plaintiff contends that no commission is due for this sale because covers rather than furniture were sold. No specific agreement has been established as to the applicable commission for such sales and, accordingly, no commission is found to be due.

12. The Buccaneer Hotel. Ten percent commission of $52.25 due.

13. The Buccaneer Hotel. Ten percent commission of $37.08 due.

14. St. Croix by the Sea Hotel. Ten percent commission of $556 is due.

15. The Beach Hotel of St. Croix. Here the amount of the sale is listed in the answers to the interrogatories as $5,285. This, however, is the number of the invoice which shows the amount of the sale to be $372.60. Plaintiff claims to have paid a commission of $37.26 on November 21, 1966, which fact is not disputed by defendant.

16. Mrs. Ford Bond. A ten percent commission was paid on this sale, plaintiff claiming that defendant had asked that she be given wholesale prices. The invoice would appear to support plaintiff's evidence in this regard and the court finds that no additional commission is due.

17. Estate Carlton Hotel. Plaintiff has justified its refusal to pay a commission on this sale of $18,209.50 by asserting that it had previously done business with the owners, Swiss Chalet Corporation, in San Juan. This does not meet the requirement of the agreement that the prior dealings must have been on St. Croix business. A commission of $1,820.95 is due.

18. H. Bredermeier. A commission of $12.67 is due on this sale of $38, inasmuch as the sale was to an individual.

19. Mrs. Howard Spiller. This sale appears to have been for fabric and not furniture. See item 11 above.

20. Bill Boydston. Sales of $490 and $94 were made to this San Juan decorator for delivery to individuals in St. Croix. See comments in item 10 above. Commissions of $163.33 and $31.33 are due.

21. A. E. Neal. A ten percent commission is claimed here on two sales of $8,151.80 and $264. Included in the first figure is an insurance charge of $40 which will be deducted, making the commission on the two sales $837.58, $711.20 of which has been paid. The balance due is $126.38.

22. Jane Terwilliger. The total amount of the sale here was $791.77 and a discount of two percent for cash and a special discount of $100.06 was given the purchaser. Plain-

tiff has produced testimony to the effect that the discounts were given by agreement with defendant, which has made no claim to the contrary. Applying the 50 percent formula to the resulting price of $675.87, a commission of $225.29 is due.

23. A. E. Neal. No commission claimed on this sale.

24. The Buccaneer. Commission paid.

25. A. E. Neal. Plaintiff claims to have paid $70.40 on this sale of $774.40. Payment is not denied by defendant although its records do not reflect the receipt of this sum. The court, however, finds the sum of $7.04 to be due.

26. Jane Terwilliger. Sale of $103.50. Commission of $34.50 is due.

27. The Beach Hotel of St. Croix. Commission paid.

28. Jane Terwilliger. Sale of $808.50. Commission of $269.50 is due.

■ The remaining sales listed by plaintiff in its answers to interrogatories were shown by its invoices to have been made after November 13, 1967, the date upon which defendant filed its counterclaim. These transactions are accordingly subsequent to the filing of suit and will not be considered by the court in this proceeding, no supplemental pleadings having been filed pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, 5 V.I.C. App. I.

It is noted that in all cases where discounts were given to purchasers plaintiff has reported the amount of the sale to be the amount remaining after such deductions. Defendant, having no records of these transactions as they were not previously reported to him, has assumed in the testimony of Mr. Schoyer that the prices listed by plaintiff were the retail prices for the items sold, and has claimed its commissions accordingly. In the light of the information disclosed by plaintiff's invoices the commissions due under the agreement are, of course, higher.

643

At the trial of the case the deposition of Mr. Duprey was offered in evidence. By agreement of counsel it was admitted subject to the court's rulings on objections made at the time of its taking. The court's rulings are as follows:

Plaintiff's first objection, shown on page 18 of the deposition, to the introduction in evidence of a letter dated July 30, 1967, from William Sigal to John Marsh, is sustained and the letter is not admitted in evidence. The letter dated November 21, 1966, from Mr. Duprey to Mr. Schoyer is admitted in evidence, as defendant's exhibit B, as is Mr. Schoyer's letter of May 29, 1967, to Mr. Duprey, marked defendant's exhibit C.

Plaintiff's second objection, noted on page 20, is overruled. In its first motion to dissolve the attachment defendant prayed for damages for the wrongful attachment. Inquiries from persons or firms with whom defendant had business dealings concerning its credit are certainly relevant and material to its claim for damages inasmuch as, if its credit is impaired by plaintiff's wrongful attachment defendant is entitled to compensation for the damages suffered.

Plaintiff's objections stated on pages 22 and 23 to questions concerning its willingness to compromise the claims asserted by defendant in its counterclaim are sustained, as are the objections to the questions concerning the filing of the complaint and the attachment. It appears that these questions refer to a proposed compromise agreement for settlement of the case.

Defendant's objections to leading questions as reported on pages 26 and 27 are overruled as the questions seem to be proper cross-examination. Pursuant to Rule 43(b) of the Federal Rules of Civil Procedure, supra, an adverse party, or in the case of a corporation, an officer thereof, may be interrogated by leading questions, contradicted and impeached by the party calling him. He is, how-

ever, subject to cross-examination by the adverse party upon the subject matter of his examination in chief.

The answers to the questions to which objections have been sustained will be stricken from the record and have not been considered by the Court.

The court will enter judgment for the defendant and counterclaimant for the total amount of the commissions due, $5,755.20 plus damages in the amount of $320.10 for the wrongful attachment, this being the amount of interest at six percent per annum on the funds deposited with the court for 220 days, plus costs, including attorneys fees of $1,200.